1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY THERMIDOR, | ) 1:10-cv—02096-LJO-SKO-HC |
| | ) |
| Petitioner, | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) GRANT RESPONDENT'S MOTION TO |
| | ) DISMISS THE PETITION WITHOUT |
| v. | ) LEAVE TO AMEND FOR FAILURE TO |
| | ) STATE A COGNIZABLE DUE PROCESS |
| KEN CLARK, | ) CLAIM (Docs. 14, 1, 6) |
| | ) |
| Respondent. | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) DISMISS THE PETITION WITHOUT |
| _____ | ) LEAVE TO AMEND  (DOCS. 1, 6) |

FINDINGS AND RECOMMENDATIONS TO
DECLINE TO ISSUE A CERTIFICATE OF
APPEALABILITY AND TO DIRECT THE
CLERK TO CLOSE THE CASE

**OBJECTIONS DEADLINE:
THIRTY (30) DAYS**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is the Respondent's motion to dismiss, which was filed on March 7, 2011.  Petitioner filed an opposition to the motion on May 31, 2011.  No reply was filed.

I.  Consideration of a Motion to Dismiss

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year

1

1  limitation period provided for by 28 U.S.C. § 2244(d)(1).

2  Respondent also argues that Petitioner's claim is not cognizable

3  in a proceeding pursuant to 28 U.S.C. § 2254.

4      Rule 4 of the Rules Governing Section 2254 Cases in the

5  United States District Courts (Habeas Rules) allows a district

6  court to dismiss a petition if it "plainly appears from the face

7  of the petition and any exhibits annexed to it that the

8  petitioner is not entitled to relief in the district court...."

9      The Ninth Circuit has allowed respondents to file motions to

10 dismiss pursuant to Rule 4 instead of answers if the motion to

11 dismiss attacks the pleadings by claiming that the petitioner has

12 failed to exhaust state remedies or has violated the state's

13 procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418,

14 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss

15 a petition for failure to exhaust state remedies); White v.

16 Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to

17 review a motion to dismiss for state procedural default); Hillery

18 v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).

19 Thus, a respondent may file a motion to dismiss after the Court

20 orders the respondent to respond, and the Court should use Rule 4

21 standards to review a motion to dismiss filed before a formal

22 answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

23     Respondent's motion to dismiss addresses in part the

24 untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).

25 The material facts pertinent to the motion are mainly found in

26 copies of the official records of state administrative and

27 judicial proceedings which have been provided by Respondent and

28 Petitioner, and as to which there is no factual dispute.  Because

2

1  Respondent has not filed a formal answer, and because
2  Respondent's motion to dismiss is similar in procedural standing
3  to a motion to dismiss for failure to exhaust state remedies or
4  for state procedural default, the Court will review Respondent's
5  motion to dismiss pursuant to its authority under Rule 4.

6      II.   Background

7      Petitioner alleges he is an inmate of the California
8  Substance Abuse Treatment Facility and State Prison at Corcoran,
9  California, serving a sentence of fifteen (15) years to life
10 imposed in the Superior Court of the State of California, County
11 of Orange, on October 6, 1998, upon Petitioner's conviction of
12 forcible rape, forcible oral copulation, and false imprisonment
13 in violation of Cal. Pen. Code §§ 261, 288A, and 236.  (Pet. 1.)
14 Petitioner challenges the decision of California's Board of
15 Parole Hearings (BPH) finding Petitioner unsuitable for release
16 on parole after a hearing held on May 13, 2009.  (Id. at 10.)
17 Petitioner raises the following claims in the petition:  1) the
18 BPH denied parole based on a post hoc rationalization, which
19 resulted in a violation of Petitioner's state and federal rights
20 to due process; 2) Petitioner's closing statement was cut off at
21 the hearing, which deprived him of the opportunity to express his
22 remorse for the commitment offense and to inform the BPH of the
23 rehabilitative gains he has acquired through his incarceration;
24 3) the BPH's decision violated Petitioner's due process rights
25 because it was not supported by any evidence that Petitioner
26 posed an unreasonable risk if released; and 4) the BPH failed to
27 give Petitioner an individualized consideration of pertinent
28 parole suitability factors.  (Id. at 10-21, 45.)

The transcript of the hearing held before the BPH submitted by Petitioner in support of the petition (doc. 6) reflects that Petitioner attended the hearing with counsel (id. at 2, 5); received documents before the hearing and had an opportunity to correct or clarify the record (id. at 7, 9, 47, 66); testified before the BPH concerning many factors of parole suitabilty (id. at 10-90, 95-97); and made a statement to the BPH in favor of parole (id. at 105-09). Petitioner's counsel also made statement to the BPH in favor of release. (Id. at 100-05.)

Petitioner was present when the BPH stated the reasons for the finding that Petitioner still posed a present risk of danger to society or a threat to public safety if released. These reasons included Petitioner's failure to understand the nature and magnitude of his commitment offenses, the multiplicity of victims, Petitioner's lack of insight into the causative factors that led him to offend, his blaming others for his offenses, his problematic relationship with his parents, history of alcohol abuse, some inadequacies in his parole plans, and a psychiatric evaluation. (Doc. 6, 110-32.)

The bottom of the final page of the reported proceedings of the parole hearing states:

> PAROLE DENIED FIVE YEARS
> THIS DECISION WILL BE FINAL ON:  SEP 10 2009
> YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT
> DATE, THE DECISION IS MODIFIED

(Doc. 6, 132.)

Petitioner's proof of service reflects that his first state habeas petition challenging the BPH's decision was filed on January 14, 2010. (Mot., Ex. 2.)

Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988). The mailbox rule applies to federal and state petitions alike. Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  In Campbell v. Henry, the court declined to determine whether in considering the date of mailing, it was more appropriate to use the date on the proof of service or the date of the postmark. Campbell v. Henry, 614 F.3d 1056, 1059 n.2 (9th Cir. 2010).  It has been held that the date the petition is signed may be inferred to be the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule.  Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).

Here, Petitioner's proof of service is declared to be true under penalty of perjury, and states the petition was handed to institutional staff to be mailed on January 14, 2010.  The petition is thus deemed to have been filed in the Superior Court as of January 14, 2010, pursuant to the mailbox rule.

On February 1, 2010, the Superior Court denied the petition because the record revealed that the decision was supported by some evidence of multiple reasons for denying parole. (Mot., Ex. 3.)  The court sent a certified copy of the court's signed order to Petitioner at Corcoran.  (Id.)

1   On February 25, 2010, Petitioner declared under penalty of
2   perjury that on that date he handed to institutional staff a
3   petition for writ of habeas corpus addressed to the California
4   Court of Appeal, Fourth Appellate District (DCA).  (Mot., Ex. 4.)
5   Thus, the petition will be considered to have been filed in the
6   DCA on that date.  On March 4, 2010, the DCA summarily denied the
7   petition.  (Mot., Ex. 5.)

8   Petitioner signed and dated a petition directed to the
9   California Supreme Court on March 9, 2010.  On March 23, 2010,
10  Petitioner signed and dated a declaration made under penalty of
11  perjury stating that he had handed his petition for review to
12  prison officials on March 9, 2010; it was returned for allegedly
13  deficient address information, but Petitioner had used an address
14  he had been given at prison in response to a query concerning the
15  exact address of the California Supreme Court.  Petitioner handed
16  the petition to prison staff with his declaration on March 23,
17  2010.  (Mot., Ex. 6.)

18  The docket of the California Supreme Court in Stanley
19  Thermidor, on Habeas Corpus, case number S181325, reflects that
20  an "untimely" petition for review was received on March 26, 2010.
21  On April 5, 2010, Petitioner applied for relief from default.  On
22  that same date, the petition for review was filed with the
23  permission of the court.  After receipt of the record from the
24  DCA, the court summarily denied the petition for review on June
25  9, 2010.  (Mot., Ex. 7.)

26  Petitioner signed and dated the petition filed in this case
27  on November 7, 2010.  (Pet., doc. 1, 6, 23.)  His certification
28  of service, supported by a declaration under penalty of perjury,

6

1 is also dated November 7, 2010.

2     On November 1, 2010, this court received a motion to submit

3 exhibits to the petition within thirty (30) days of filing a

4 petition for writ of habeas corpus because Petitioner was unable

5 to make copies of the exhibits to the petition. (Id. at 7-8.)

6 Petitioner signed the motion on October 27, 2010. (Id.) The

7 petition is stamped filed as of November 10, 2010. (Id. at 1.)

8     III.   Statute of Limitations

9     Respondent argues that the petition is untimely because it

10 was filed outside the one-year limitations period.

11     A.   Legal Standards

12     On April 24, 1996, Congress enacted the Antiterrorism and

13 Effective Death Penalty Act of 1996 (AEDPA).   The AEDPA applies

14 to all petitions for writ of habeas corpus filed after the

15 enactment of the AEDPA.   Lindh v. Murphy, 521 U.S. 320, 327

16 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en

17 banc), cert. denied, 118 S.Ct. 586 (1997).   Because Petitioner

18 filed his petition in this Court in 2010, the AEDPA applies to

19 the petition.

20     The AEDPA provides a one-year period of limitation in which

21 a petitioner must file a petition for writ of habeas corpus.   28

22 U.S.C. § 2244(d)(1).   As amended, subdivision (d) reads:

23       (1)   A 1-year period of limitation shall apply to
     an application for a writ of habeas corpus by a person
24      in custody pursuant to the judgment of a State court.
     The limitation period shall run from the latest of –
25

26       (A) the date on which the judgment became
     final by the conclusion of direct review or the
     expiration of the time for seeking such review;
27

28       (B) the date on which the impediment to
     filing an application created by State action in

violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

B.  <u>Commencement of the Running of the Limitations Period</u>

The one-year limitation period of § 2244 applies to habeas petitions brought by persons in custody pursuant to state court judgments who challenge administrative decisions, such as the decisions of state prison disciplinary authorities or parole authorities.  <u>Shelby v. Bartlett</u>, 391 F.3d 1061, 1063, 1065-66 (9th Cir. 2004).  However, § 2244(d)(1)(A) is inapplicable to administrative decisions; rather, § 2244(d)(1)(D) applies to petitions challenging such decisions.  <u>Redd v. McGrath</u>, 343 F.3d 1077, 1081-82 (9th Cir. 2003) (parole board determination). Thus, the statute begins to run on the date that the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(D); <u>Redd v. McGrath</u>, 343 F.3d at 1082.  In <u>Redd v. McGrath</u>, the court concluded that the factual predicate of the habeas claims concerning the denial of parole was the parole

1  board's denial of the prisoner's administrative appeal.  Id. at

2  1082.

3  In Shelby and Redd, the pertinent date was the date on

4  which notice of the decision was received by the petitioner.

5  Thus, the statute of limitations was held to have begun running

6  the day after notice of the decision was received.  Shelby v.

7  Bartlett, 391 F.3d 1061, 1066; Redd, 343 F.3d at 1082.

8  Here, Petitioner was present when the BPH announced its

9  decision; thus, Petitioner received notice of the initial BPH

10  panel decision on May 13, 2009.  Respondent argues that the one-

11  year period thus began to run on May 14, 2009.  However, the

12  transcript of the decision reflects that the decision would not

13  be final until September 10, 2009, when the BPH's authority to

14  modify the decision would expire.  (Doc. 6, 132.)  Neither party

15  suggests that Petitioner received notice of any interim

16  modification of the decision.

17  In Redd v. McGrath, 343 F.3d 1077, 1085 (9th Cir. 2003), the

18  date chosen by the court to trigger the running of the statute

19  was the date that the administrative decision to deny parole

20  became final – which was when an administrative appeal taken by

21  the petitioner had been denied.  Redd, 343 F.3d at 1080, 1083-

22  1084.  The court determined that the petitioner could have first

23  learned of the factual basis for his claim that the parole

24  decision violated his constitutional rights on the date of the

25  administrative tribunal's denial of the petitioner's

26  administrative appeal.  The court relied on decisions of other

27  federal courts which had held that the statute begins running

28  under § 2244(d)(1)(D) on the date "the administrative decision

9

became final." Id. at 1084.[1]

Generally, it is not knowledge of some facts pertinent to a claim that constitutes discovery of a factual predicate within the meaning of § 2244(d)(1)(D); rather, it is knowledge of facts constituting reasonable grounds for asserting all elements of a claim in good faith. Hasan v. Galaza, 254 F.3d 1150, 1154-55 (9th Cir. 2001). The time begins to run when the prisoner knows, or through diligence could discover, the important facts, and not when the prisoner recognizes their legal significance. Id. at 1154 n. 3. It is not necessary for a petitioner to understand the legal significance of the facts themselves before the obligation to exercise due diligence commences and the statutory period starts running. Id.

Here, the parole decision itself stated that it would not be final for 120 days. This was consistent with state statutes and regulations. See, Cal. Pen. Code § 3041(a), (b); 2005 Cal. Stat. ch. 10 § 29; Cal. Code Regs. tit. 15, §§ 2041(a) & (h), 2043 (2010); Tidwell v. Marshall, 620 F.Supp.2d 1098, 1100-01, (C.D. Cal. 2009) (rejecting the respondent's contention that the statute began to run on the date of the parole hearing because pursuant to California law as reflected in Cal. Code Regs. tit. 15, §§ 2041(a), (h) and 2043, board decisions are characterized as proposed decisions subject to review before an effective date upon finality 120 days after the hearing at which the proposed decision was made). Thus, the initial, proposed decision could

---

[1] Because of waiver of the issue by a party, the court in Redd did not consider whether the initial administrative decision was sufficient to trigger § 2244(d)(1)(D). Id. at 1084 n. 11, 1081 n. 6.

not logically contain all the facts constituting reasonable
grounds for asserting a claim challenging a parole decision
because finality – a most important and necessary attribute of a
decision – had not yet come to pass.  This application is
generally consistent with the decisions of other circuits as
well.  See, Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003)
(claims concerning state parole board's decision to revoke parole
and rescind conduct credits accrued under § 2244(d)(1)(D) when
the state parole board's decision to revoke his parole became
final because that date was when the petitioner could have
discovered through public sources that the decision was in
effect); Cook v. New York State Div. of Parole, 321 F.3d 274,
280-81 (2nd Cir. 2003); Dulworth v. Evans, 442 F.3d 1265, 1268-69
(10th Cir. 2006); but see, Kimbrell v. Cockrell, 311 F.3d 361,
364 (5th Cir. 2002) (although the initial decision triggered the
running of the statute, the pendency of administrative appeals
would toll the running of the statute).  The Court concludes that
Petitioner correctly contends that the statutory limitation
period did not commence running until the BPH panel's decision
became final.

     In summary, the Court concludes that the date on which the
factual predicate of a decision on Petitioner's parole could
have been discovered through the exercise of reasonable diligence
was upon the decision's finality, occurring one hundred twenty
(120) days after the decision was rendered on May 13, 2009, or on
September 10, 2009.

     The statute thus began running on the next day, September
11, 2009, and absent any tolling, Petitioner had through

1  September 10, 2010, to file his petition here.  Fed. R. Civ. P.

2  6(a); see, Waldrip v. Hall, 548 F.3d 729, 735 n.2 (9th Cir.

3  2008); Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir.

4  2001).  Because the petition in the present case was filed in

5  November 2010, the petition on its face reflects that it was

6  filed outside of the one-year limitation period.

7          C.  Statutory Tolling

8       Title 28 U.S.C. § 2244(d)(2) states that the "time during

9  which a properly filed application for State post-conviction or

10  other collateral review with respect to the pertinent judgment or

11  claim is pending shall not be counted toward" the one-year

12  limitation period.  28 U.S.C. § 2244(d)(2).  Once a petitioner is

13  on notice that his habeas petition may be subject to dismissal

14  based on the statute of limitations, he has the burden of

15  demonstrating that the limitations period was sufficiently tolled

16  by providing the pertinent facts, such as dates of filing and

17  denial.  Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009)

18  (citing Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002),

19  abrogation on other grounds recognized by Moreno v. Harrison, 245

20  Fed.Appx. 606 (9th Cir. 2007)).

21       In Carey v. Saffold, 536 U.S. 214 (2002), the Court held

22  that an application is "pending" until it "has achieved final

23  resolution through the State's post-conviction procedures."  536

24  U.S. 220.  An application does not achieve the requisite finality

25  until a state petitioner "completes a full round of collateral

26  review."  Id. at 219-20.  Accordingly, in the absence of undue

27  delay, an application for post conviction relief is pending

28  during the "intervals between a lower court decision and a filing

12

1  of a new petition in a higher court" and until the California

2  Supreme Court denies review.  Id. at 223; Biggs v. Duncan, 339

3  F.3d 1045, 1048 (9th Cir. 2003).

4      However, when one full round up the ladder of the state

5  court system is complete and the claims in question are

6  exhausted, a new application in a lower court begins a new round

7  of collateral review.  Biggs v. Duncan, 339 F.3d at 1048.  For

8  example, the statute of limitations is not tolled from the time a

9  final decision is issued on direct state appeal and the time the

10  first state collateral challenge is filed because there is no

11  case "pending" during that interval.  Nino v. Galaza, 183 F.3d

12  1003, 1006 (9th Cir. 1999).

13      Here, after the commencement of the running of the

14  limitation period on September 11, 2009, a total of 125 days ran

15  until Petitioner filed his petition in the state trial court on

16  January 14, 2010.  There was no case "pending" during that

17  interval of time.

18      With respect to the pendency of state court petitions,

19  Respondent does not contend that any of the state court petitions

20  were improperly filed; Respondent is "presuming" that the

21  limitation period was tolled while the state court habeas

22  petitions were pending, and thus Respondent appears to concede

23  that the running of the statutory period was tolled from January

24  14, 2010, when Petitioner's first state court petition was filed,

25  until June 9, 2010, when the California Supreme Court denied the

26  petition before it.  (Mot., doc. 14, 4.)  Thus, the limitation

27  period was tolled for 147 days, and it commenced to run again on

28  June 10, 2010, the day after the California Supreme Court's

1   denial.  The limitation period thus again ran from June 10, 2010,

2   through November 6, 2010, the day before the petition was filed

3   in this Court.  Thus, 150 more days of the period ran during this

4   interval.

5        When statutory tolling is considered, the court concludes

6   that only 275 days of the period ran before Petitioner filed his

7   petition here.  Thus, the petition was timely filed.  Therefore,

8   the Court will recommend that Respondent's motion to dismiss the

9   petition on the ground of untimeliness be denied.

10        IV.  <u>Failure to State a Cognizable Due Process Claim</u>

11        A district court may entertain a petition for a writ of

12   habeas corpus by a person in custody pursuant to the judgment of

13   a state court only on the ground that the custody is in violation

14   of the Constitution, laws, or treaties of the United States. 28

15   U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

16   375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13,

17   16 (2010) (per curiam).

18        The Supreme Court has characterized as reasonable the

19   decision of the Court of Appeals for the Ninth Circuit that

20   California law creates a liberty interest in parole protected by

21   the Fourteenth Amendment Due Process Clause, which in turn

22   requires fair procedures with respect to the liberty interest.

23   <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

24        However, the procedures required for a parole determination

25   are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>

26

27

28

of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[2]

Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court

rejected inmates' claims that they were denied a liberty interest

because there was an absence of "some evidence" to support the

decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication—and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether

---

[2] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. Id. at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. Id. at 13.  In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. Id. at 15.

1  [the petitioners] received due process.

2  Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly

3  noted that California's "some evidence" rule is not a substantive

4  federal requirement, and correct application of California's

5  "some evidence" standard is not required by the Federal Due

6  Process Clause.  Id. at 862-63.

7  Here, in his first and third claims concerning the validity

8  of the BPH's statement of reasons and the extent to which the

9  decision was supported by some evidence, Petitioner asks this

10  Court to engage in the very type of analysis foreclosed by

11  Swarthout.  Petitioner does not state facts that point to a real

12  possibility of constitutional error or that otherwise would

13  entitle Petitioner to habeas relief because California's "some

14  evidence" requirement is not a substantive federal requirement.

15  Review of the record for "some evidence" to support the denial of

16  parole is not within the scope of this Court's habeas review

17  under 28 U.S.C. § 2254.

18  Petitioner relies on the statement of one of the parole

19  commissioners near the end of the hearing as evidence of

20  partiality or bias that violated his right to due process of law.

21  Presiding Commissioner Biggers listened to the closing statements

22  made by Petitioner, his counsel, and the prosecutor.  (Id. at 97-

23  109.)  Before Petitioner began his statement, Commissioner

24  Biggers told Petitioner that he had the opportunity to tell the

25  panel why he felt he was suitable for parole.  (Id. at 105.)  In

26  response, Petitioner expressed shame and remorse for his crimes,

27  detailed his efforts to deal with alcoholism, and described his

28  support network and his belief that he would become a productive

16

member of society.   The following colloquy then occurred:

> **INMATE THERMIDOR:**   And I understand the D.A.'s position –

> **PRESIDING COMMISSIONER BIGGERS:**   I don't want you talking about the D.A.'s position, I want to know why you feel you're suitable, sir.   Let me -

> **INMATE THERMIDOR:**   And I -

> **PRESIDING COMMISSIONER BIGGERS:**   - let me finish. You don't go by and talk about what the D.A.'s position on.   That's not your role.   Your role right now is to tell this Panel why you feel you're suitable, period.

> **INMATE THERMIDOR:**   I believe I meet the criteria that is written into Title 15, Division 2, on suitability.

> **PRESIDING COMMISSIONER BIGGERS:**   Is that all you have to say, sir?   I've already told you about - you don't fit the criteria.   We'll decide whether you fit the criteria or not, not you.   You understand that?

> **INMATE THERMIDOR:**   Yes, sir.

> **PRESIDING COMMISSIONER BIGGERS:   Okay.   Now, do you have anything else to say as to why you feel you're suitable?**

> **INMATE THERMIDOR:**   No, sir.

> **PRESIDING COMMISSIONER BIGGERS:**   We're going to go into deliberations at this point.

(Doc. 6, 108-09.)

Petitioner argues that the remark beginning with the sentence, "I've already told you about - you don't fit the criteria," indicated that the commissioner had already decided Petitioner was not suitable for parole and thus had prejudged the suitability issue so as to deprive Petitioner of an impartial tribunal in violation of his right to due process of law.

Considering the commissioner's words themselves, the remark is reasonably understood as a reference to the fact that the

17

decision-makers were the BPH, and that Petitioner was being consulted not to provide a response to the prosecutor's opening statement or to interpret the pertinent regulations concerning parole suitability factors, but rather to give information that Petitioner wanted the BPH to consider that indicated that he was suitable for parole.  This understanding is reinforced by reference to the context in which the remark was made.  The commissioner's remark was preceded by his instructions, which included an emphatic repetition that the statement to be made by Petitioner was regarding why Petitioner felt he was suitable for parole.  (Id. at 105.)  Then, immediately after making the statement concerning suitability, the commissioner again attempted to obtain more appropriate information from Petitioner concerning his suitability for parole.

The larger context is also consistent with this interpretation.  Presiding Commissioner Biggers heard extensive testimony from Petitioner concerning various factors of parole suitability.  The commissioner did not indicate that he had made up his mind about the ultimate issue of suitability, and contemplated undertaking deliberations before deciding the question of suitability.  For example, he explained that during the course of their deliberations, the commissioners would review all Petitioner's summaries of books he had read in connection with a human development program. (Doc. 6, 60-61.)

The transcript of the hearing reflects not a negative attitude on the part of Commissioner Biggers toward Petitioner, but rather one of concern.  For example, the commissioner attempted to guide Petitioner to an understanding that his status

as a sex offender might prevent his participation in some employment or residential opportunities, and that his parole plans required more detail than Petitioner had obtained from some of his supporters on the outside. (Id. at 68-73, 78-82.) He directed Petitioner to the warden as the person to consult in connection with Petitioner's statement that he wanted to start a program in prison. (Id. at 84.) The commissioner instructed Petitioner to identify his sponsor and back-up sources if Petitioner felt he was having a problem remaining sober, and he advised Petitioner to be alert to triggers that might cause a problem. (Id. at 89-90.)

The record reflects that some occasional irritation appears to have developed. For example, when the commissioner asked Petitioner if he had only one job offer, Petitioner volunteered that he had marketable skills. Commissioner Biggers responded that he had not asked about that, he knew what Title 15 said, and he did not need to be reminded that Petitioner had marketable skills. He then continued the review of Petitioner's parole plans. (Id. at 86.) The commissioner also mildly rebuked Petitioner for responding to a question before the question was finished. (Id. at 93.) However, the transcript generally reflects a hearing involving neutral, participatory decision-makers who did not reasonably appear to have prejudged the issue of suitability.

A fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136 (1955). California inmates have a due process right to parole consideration by neutral, unbiased decision makers. O'Bremski v.

19

1  Maass, 915 F.2d 418, 422 (9th Cir. 1990).  Fairness requires an

2  absence of actual bias and of the probability of unfairness.  Id.

3  at 136.  Bias may be actual, or it may consist of the appearance

4  of partiality in the absence of actual bias.  Stivers v. Pierce,

5  71 F.3d 732, 741 (9th Cir. 1995).  A showing that the adjudicator

6  has prejudged, or reasonably appears to have prejudged, an issue,

7  is sufficient.  Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir.

8  1992).  However, there is a presumption of honesty and integrity

9  on the part of decision makers.  Withrow v. Larkin, 421 U.S. 35,

10  46-47 (1975).

11      Further, opinions formed by a judge on the basis of facts

12  introduced or events occurring in the course of the current

13  proceedings do not constitute a basis for a bias or partiality

14  motion unless they display a deep-seated favoritism or antagonism

15  that would make fair judgment impossible.  Liteky v. United

16  States, 510 U.S. 540, 555 (1994).  Thus, stern and even short-

17  tempered efforts at courtroom administration, and judicial

18  remarks during the course of a trial that are critical or

19  disapproving of, or even hostile to counsel, the parties, or

20  their cases, ordinarily do not support a bias or partiality

21  challenge.  Id. at 555-56.  Likewise, "expressions of

22  impatience, dissatisfaction, annoyance, and even anger, that are

23  within the bounds of what imperfect men and women... sometimes

24  display" do not establish bias.  Id.

25      Here, the record does not reflect any basis for a finding of

26  any deep-seated favoritism or antagonism that would make a fair

27  judgment impossible.  Petitioner has not shown that the

28  commissioner prejudged or reasonably appeared to have prejudged

1  the case.  Petitioner has not alleged facts entitling him to

2  habeas relief or even pointing to a real possibility of

3  constitutional error.

4      To the extent that Petitioner argues that his closing

5  statement was cut off at the hearing, the Court notes that

6  Petitioner made a closing statement to the BPH.  (Doc. 6, 105-

7  09.)  The previously quoted portion of the transcript reflects

8  that no effort or attempt to make or complete a closing statement

9  to the BPH was cut off or otherwise truncated.  Instead, in the

10 course of his closing statement, Petitioner began to remark on

11 the prosecutor's position.  The Presiding Commissioner informed

12 Petitioner that he was not to talk about the prosecutor's

13 position; rather, Petitioner was to tell the panel why Petitioner

14 believed he was suitable for parole.  Petitioner continued his

15 statement, concluding that he believed he was suitable for

16 parole.  When asked if he had anything else to say regarding his

17 suitability, Petitioner responded, "No, sir."  (Doc. 6, 108-09.)

18 Thus, even if Petitioner had a due process right to complete his

19 opening statement, Petitioner has not shown any interference with

20 his effort to make such a statement.

21     Further, the minimal standards of due process applicable to

22 the parole suitability hearing do not require that Petitioner be

23 permitted to make any particular type of closing statement.  The

24 transcript reflects that Petitioner had an opportunity to be

25 heard and received a statement of reasons for the decision.

26 Petitioner thus received all process that was due.

27     Petitioner cites state law concerning a right to due process

28 of law.  To the extent that Petitioner's claim or claims rest on

21

state law, they are not cognizable on federal habeas corpus.
Federal habeas relief is not available to retry a state issue
that does not rise to the level of a federal constitutional
violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16
(2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged
errors in the application of state law are not cognizable in
federal habeas corpus.  Souch v. Schiavo, 289 F.3d 616, 623 (9th
Cir. 2002).

Petitioner's claim that he did not receive a sufficiently
individualized consideration of the factors appropriate under
California law is likewise not cognizable.  The minimal due
process to which Petitioner is entitled does not include any
particular degree of individualized consideration.

Petitioner argues that Swarthout v. Cooke does not govern
his due process claims because his claims concerning his liberty
interest in parole are not based on California law, but rather on
the United States Constitution.  However, it is established that
there is no federal right to be conditionally released before the
expiration of a valid sentence.  Roberts v. Hartley, 640 F.3d
1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke).  In
Swarthout v. Cooke, the Court did unequivocally determine that
the Constitution does not impose on the states a requirement that
its decisions to deny parole be supported by a particular quantum
of evidence, independent of any requirement imposed by state law.
Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011). Petitioner
asserts that his claims are based on substantive due process.
However, there is no substantive due process right created by
California's parole scheme; if the state affords the procedural

protections required by <u>Greenholtz</u> and <u>Cooke</u>, the Constitution requires no more.  <u>Roberts v. Hartley</u>, 640 F.3d at 1046.

In summary, Petitioner's due process claims concerning the parole suitability hearing and the evidence supporting the BPH's decision must be dismissed because they are not cognizable in this proceeding.

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440 F.2d 13, 14 (9th Cir. 1971).

Here, Petitioner did not contend that he lacked an opportunity to review records or to be heard, or that he did not receive a statement of reasons for the BPH's decision.  Further, the allegations in the petition and the undisputed record of the parole hearing reveal that Petitioner attended the parole suitability hearing, made statements to the BPH, and received a statement of reasons for the decision of the BPH from apparently impartial decision-makers.  Thus, Petitioner's own allegations and documentation establish that he had an opportunity to be heard and received a statement of reasons for the decisions in question.  It therefore does not appear that Petitioner could state a tenable due process claim.

Accordingly, the court will recommend that Respondent's motion to dismiss the petition for failure to state a cognizable due process claim be granted, and the petition be dismissed without leave to amend because Petitioner failed to state a cognizable due process claim.

///

1      V.   <u>Certificate of Appealability</u>

2           Unless a circuit justice or judge issues a certificate of

3    appealability, an appeal may not be taken to the Court of Appeals

4    from the final order in a habeas proceeding in which the

5    detention complained of arises out of process issued by a state

6    court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

7    U.S. 322, 336 (2003).  A certificate of appealability may issue

8    only if the applicant makes a substantial showing of the denial

9    of a constitutional right.  § 2253(c)(2).  Under this standard, a

10   petitioner must show that reasonable jurists could debate whether

11   the petition should have been resolved in a different manner or

12   that the issues presented were adequate to deserve encouragement

13   to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

14   (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

15   certificate should issue if the Petitioner shows that jurists of

16   reason would find it debatable whether the petition states a

17   valid claim of the denial of a constitutional right and that

18   jurists of reason would find it debatable whether the district

19   court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

20   529 U.S. 473, 483-84 (2000).

21          In determining this issue, a court conducts an overview of

22   the claims in the habeas petition, generally assesses their

23   merits, and determines whether the resolution was debatable among

24   jurists of reason or wrong.  <u>Id.</u>  It is necessary for an

25   applicant to show more than an absence of frivolity or the

26   existence of mere good faith; however, it is not necessary for an

27   applicant to show that the appeal will succeed.  <u>Miller-El v.</u>

28   <u>Cockrell</u>, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

VI.   <u>Recommendation</u>

Accordingly, it is RECOMMENDED that:

1)   Respondent's motion to dismiss the petition as untimely be DENIED; and

2)   Respondent's motion to dismiss the petition without leave to amend for failure to state a cognizable due process claim be GRANTED; and

3)   The petition be DISMISSED without leave to amend; and

4)   The Court DECLINE to issue a certificate of appealability; and

5)   The Clerk be directed to close the case because an order of dismissal would terminate the action in its entirety.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    July 6, 2011**                              **/s/ Sheila K. Oberto**
                                         UNITED STATES MAGISTRATE JUDGE